IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ASIA MOORE                          :
                                    :
                                    :
   v.                               :   Civil Action No. DKC 11-3742
                                    :
WASHINGTON HOSPITAL CENTER          :
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are motions to dismiss or for summary judgment (ECF No. 11) and to seal (ECF No. 14) filed by Defendant Washington Hospital Center ("WHC"). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be granted.

**I.  Background**

The following facts are either undisputed or uncontroverted. Plaintiff Asia Moore was hired by WHC as an environmental services aide in May 2007. (ECF No. 13-2, at 2).[1] Prior to her first day on the job, she was provided a copy of WHC's employee handbook and acknowledged that it was her "responsibility to adhere to the policies and practices

---

[1] References for ECF Nos. 13 and 15 are to page numbers designated by the court's internal electronic case filing system.

referenced by, and contained within, the handbook." (*Id.* at 3). Among those were policies and practices concerning sick leave and leave under the Family Medical Leave Act ("FMLA"). (ECF Nos. 13-4, 13-5). As relevant here, WHC's FMLA policy provided that upon "returning from a medical [leave of absence] associates are required to obtain a fitness for duty clearance from Work Life Services ["WLS"] department." (ECF No. 13-5, at 3).

On or about June 1, 2009, Plaintiff became ill and received treatment in WHC's emergency room. (ECF No. 15-1, at 10). The emergency room physician gave her a medical certificate recommending that she stay home from work until at least June 3. (ECF No. 15-4, at 3). On June 3, Plaintiff presented the medical certificate to a nurse practitioner in WHC's Occupational Health ("OH") department, reporting that her symptoms had not improved and that she was unable to return to work. (ECF No. 15-1, at 9). The nurse practitioner told Plaintiff to obtain a letter from her physician clearing her to return to work when she had recovered. (*Id.* at 10).

On June 15, Plaintiff submitted an FMLA leave request to the WLS department. (ECF No. 15-5). She was subsequently approved for FMLA leave from June 1-15 and June 25-29, 2009. (*Id.*). On June 30, she reported to work, presenting a letter from her doctor. (ECF No. 15-1, at 10). Pursuant to WHC

policy, she was examined by a nurse practitioner in the OH department and diagnosed with possible bronchitis; consequently, she was not cleared to return to work. (*Id.*). Plaintiff ultimately applied, and was approved for, short term disability benefits and FMLA leave for the period from June 30 through July 12. (ECF No. 15-1, at 11).

Plaintiff still had not returned to work on August 12, 2009, when she contacted a representative in the OH department to inquire about short term disability benefits. (*Id.*). During the course of that discussion, Plaintiff was told that her approved leave of absence had expired. The next day, she contacted Niurka Bernal, a nurse in the WLS department, and told her that she had reported to work on July 13, but was told by Angela Young, her direct supervisor, that she could not return because her FMLA leave did not expire until the end of July. (ECF Nos. 13-10; 15-1, at 11). Ms. Bernal told Plaintiff that it was her responsibility to coordinate FMLA leave directly with the WLS department and that she had been absent without leave for approximately one month. (ECF No. 15-1, at 11). On the same date, Primrose Horn, the clinical manager of the WLS department, sent a letter to Plaintiff, advising that her leave of absence expired on July 12; that she was required to "be cleared through the Occupational Health Department and . . . [to] bring a Return to Work Clearance Form . . . from [her]

3

doctor" before she would be permitted to return to work; that she was required to provide "appropriate verification from [her] physician by 08-20-09" if she was "planning on extending [her] leave of absence"; and that WHC would "consider [her] to have abandoned [her] employment at the hospital and could regard [her] action as a voluntary termination of [her] employment if [she did] not respond by 08-20-09." (ECF No. 13-7). The letter further directed Plaintiff to contact the WLS department with any questions.

Plaintiff subsequently contacted Ms. Young, apparently on several occasions (ECF No. 15-1, at 12), but did not contact the WLS department. Having received no response, Ms. Horn sent a letter on August 28, 2009, advising Plaintiff, "[s]ince you have not returned to work, nor extended your leave, your employment is terminated." (ECF No. 13-8).

Plaintiff commenced this action on September 20, 2011, by filing a *pro se* complaint in the District Court of Maryland for Prince George's County, alleging that she was "wrongfully terminated on August 28, 2009[,] in violation of the federal Family and Medical Leave Act, 29 U.S.C. § 2615, because [she] exercised [her] rights under that Act." (ECF No. 2-1). WHC timely removed to this court on the basis of federal question jurisdiction. (ECF No. 1).

On February 6, 2012, WHC filed the pending motion to dismiss or for summary judgment (ECF No. 11), followed the next day by a motion to seal certain exhibits supporting the prior motion. (ECF No. 14).[2] By a letter dated February 7, the clerk advised Plaintiff that a potentially dispositive motion had been filed and that her failure to file a written response within seventeen days could result in dismissal of the case or the entry of judgment against her without further notice. (ECF No. 12). Plaintiff nevertheless failed to file a timely response.[3]

## II. Motion to Dismiss or for Summary Judgment

### A. Standards of Review

WHC's motion implicates two standards of review. Initially, Defendant moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and

---

[2] WHC separately filed the motion to dismiss or for summary judgment and supporting memorandum (ECF No. 11), the unsealed exhibits in support of that motion (ECF No. 13), and the exhibits that it seeks to seal. (ECF No. 15).

[3] On March 26, approximately one month after the seventeen-day period had expired, Plaintiff submitted a handwritten letter generally asserting her desire "to continue to process the case and prove to the judge why [she is] fighting[.]" (ECF No. 16).

plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). Complaints filed by *pro se* litigants are "to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). The court need not, however, accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or

conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

Defendant seeks dismissal based on expiration of the applicable statute of limitations, which is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c).  An affirmative defense is not generally an appropriate basis for dismissal.  *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002).  Courts have found, however, that dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."  *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996); *see also Rice v. PNC Bank, N.A.*, No. PJM 10-07, 2010 WL 1711496, at *3 (D.Md. Apr. 26, 2010).

As alternative relief, WHC moves for summary judgment. A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**B.   Analysis**

WHC initially contends that Plaintiff's complaint is time-barred. FMLA claims are generally subject to a two-year statute of limitations, which commences "after the date of the last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1). Where the alleged violation is willful, however, the limitations period is extended to three years. *Id.* § 2617(c)(2). Here, the last event constituting the alleged violation was Plaintiff's termination, which occurred on August 28, 2009. Because Plaintiff did not commence this action until September 20, 2011, her complaint is time-barred unless she has alleged a willful violation.

A willful violation of the FMLA occurs "when an employer knew or showed reckless disregard regarding whether its conduct was prohibited." *Settle v. S.W. Rodgers Co., Inc.*, 182 F.3d 909, 1999 WL 486643, at *3 (4th Cir. 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-35 (1988)). "When 'a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period.'" *Honeycutt v. Baltimore County*, Civ. No. JFM-06-0958, 2006 WL 1892275, at *2 (D.Md. June 7, 2006) (quoting *Ungerleider v. Fleet Mortg. Group of Fleet Bank*, 329 F.Supp.2d 343, 362 (D.Conn. 2004)).

Here, the complaint does not specifically allege a willful violation, but it does recite that Plaintiff was "wrongfully terminated . . . because [she] exercised [her] rights under [the FMLA]." (ECF No. 2-1). Thus, Plaintiff's claim is one for retaliation, pursuant to 29 U.S.C. § 2615(a)(2), rather than interference, pursuant to § 2615(a)(1). *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006) ("Two types of claims exist under the FMLA: (1) 'interference' or '(a)(1)' claims in which the employee alleges that an employer denied or interfered with [her] substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against [her] for exercising [her] FMLA rights."); *Jenerette v. Montgomery County Government*, Civ. No. DKC 09-1777, 2010 WL 2817039, at *7 (D.Md. July 16, 2010) ("a wrongful termination claim is treated as a claim for retaliation under the FMLA"). A number of courts have presumed willfulness in retaliation cases. *See Beekman v. Nestle Purina Petcare Co.*, 635 F.Supp.2d 893, 909 (N.D.Iowa 2009) (finding sufficient allegation of willfulness where complaint generally alleged that "Defendant discriminated against Plaintiff and fired Plaintiff for exercising her rights under the [FMLA]"); *Block v. Sears Roebuck and Co.*, No. 07-15323, 2009 WL 36483, at *4 (E.D.Mich. Jan. 6, 2009) ("retaliation automatically includes willfulness") (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 754

(6th Cir. 1992)). Under these circumstances, it cannot be said that the face of Plaintiff's complaint clearly reveals that WHC's limitations defense is meritorious. Therefore, it is not subject to dismissal on that basis.

In alternatively moving for summary judgment, WHC argues that Plaintiff has failed to establish a *prima facie* case of retaliation under the FMLA and, in any event, that she has failed to rebut the evidence that there was a legitimate nondiscriminatory reason for her termination.

As the United States Court of Appeals for the Fourth Circuit explained in *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006):

> FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). Thus, to succeed on his retaliation claim, [the employee] must first make a prima facie showing "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). If he "puts forth sufficient evidence to establish a prima facie case of retaliation" and [the employer] "offers a non-discriminatory explanation" for his termination, [the employee] "bears the burden of establishing that the employer's proffered explanation is

11

>pretext for FMLA retaliation." *Nichols*, 251 F.3d at 502.

To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show that "(1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse employment action." *Bosse v. Baltimore County*, 692 F.Supp.2d 574, 588 (D.Md. 2010) (internal marks omitted) (quoting *Wright v. Southwest Airlines*, 319 Fed.Appx. 232, 233 (4th Cir. 2004)). WHC contends that Plaintiff cannot show a causal connection between her taking FMLA leave and the termination of her employment shortly thereafter. In support of this position, WHC cites records demonstrating that Plaintiff "took approved FMLA leave in August 2008 and June 2009," and argues that, "[g]iven the favorable manner in which each of her supported requests for FMLA were treated by WHC, the mere fact that she was terminated after taking approved FMLA leave cannot establish a causal connection." (ECF No. 11-1, at 9).

The case law it cites in support, however, is inapposite. WHC initially cites *Chidebe v. MCI Telecommunications Corp.*, 19 F.Supp.2d 444 (D.Md. 1998), for the proposition that "where previous requests for FMLA leave were fully accommodated with no adverse consequences [the] employee could not establish [a] causal connection between the exercise of rights and [the]

12

subsequent adverse action." (ECF No. 11-1, at 9). To the contrary, in *Chidebe*, 19 F.Supp.2d at 448, the court held that the plaintiff's retaliation claims failed because she could not "show a causal connection between the decision to terminate her employment, which was made and communicated to her in April 1996, and her May 7, 1996 request to take a leave of absence for stress." In other words, there could be no showing of cause and effect because, in essence, the effect preceded the alleged cause. WHC additionally cites *Blumberg v. Harbor Hosp., Inc.*, Civ. No. L-10-441, 2011 WL 4352107, at *3 (D.Md. Sept. 14, 2011), in which the court observed that temporal proximity between the protected conduct and adverse employment action is "significantly more probative in a case in which the plaintiff has not previously taken extensive leave without repercussion." In that case, however, Judge Legg "assume[d], without deciding, that the short time between [the employee's] use of leave and the [employer's] decision to end his employment [was] sufficient to make out a *prima facie* case."

For purposes of showing a causal connection, the fact that Plaintiff previously took FMLA leave without incident has little bearing, if any, on the analysis, particularly where it is undisputed that there was close temporal proximity between the protected conduct and the adverse employment action. "While evidence as to the closeness in time 'far from conclusively

13

establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" *Yashenko*, 446 F.3d at 551 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). Here, based on the undisputed facts of the case, a *prima facie* showing has been made.

The burden shifts to WHC to assert a legitimate, nondiscriminatory reason for Plaintiff's termination. WHC has offered extensive evidence that Plaintiff "was not terminated for taking or requesting leave under the FMLA, but for failing to return to work *weeks* after her approved leave had expired." (ECF No. 11-1, at 12 (emphasis in original)). WHC has established that Plaintiff was aware of the policies and procedures for taking a medical leave of absence and returning to work thereafter (ECF Nos. 13-2, 13-4, 13-5) and that she complied with those procedures on at least one prior occasion (ECF No. 15-1, at 6-7). Thus, when Plaintiff's approved leave expired on July 12, 2009, she should have been aware that she was required to obtain clearance through the WLS department prior to the time she would be permitted to return to work. Even assuming, as she asserts in her complaint, that she reported to work on July 13 and was sent away by Ms. Young, who misinformed her that she was approved for leave through the end of that month, she still failed to comply with WHC's return-to-

14

work procedures. Moreover, the evidence reflects that Plaintiff had no further contact with anyone in the WLS department until August 13, approximately one month after her leave expired. (ECF No. 15-1, at 11). Even then, she was given the opportunity to return to work by taking specified actions by August 20. (ECF No. 13-7). It was only when she failed to do so that her employment was terminated. (ECF No. 13-8). Her failure in this regard clearly provided legitimate justification for her dismissal. *See Wallace v. Rite Aid Corp.*, Civ. No. PJM 10-2190, 2012 WL 366896, at *3 (D.Md. Feb. 1, 2012) ("It is well established that discharging an employee who fails to report to work is a valid, nondiscriminatory reason for termination.") (citing *Moticka v. Weck Closure Sys.*, 183 Fed.Appx. 343, 349 (4th Cir. 2006); *Peeples v. Coastal Office Prods., Inc.*, 64 Fed.Appx. 860, 864 (4th Cir. 2003)).

The burden, therefore, shifts to Plaintiff to provide evidence that WHC's proffered justification is pretextual. Because Plaintiff has not provided any evidence, WHC is entitled to summary judgment.

**III. Motion to Seal**

WHC has also filed a motion to seal certain exhibits offered in support of its summary judgment motion on the ground that they contain "sensitive health information" related to

Plaintiff. (ECF No. 14, at 1). Plaintiff has not opposed this motion.

Generally, a motion to seal must comply with Local Rule 105.11, which provides, in relevant part:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections.

This rule endeavors to protect the common law right to inspect and copy judicial records and documents, *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), while recognizing that competing interests sometimes outweigh the public's right of access, *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Although WHC has offered no explanation as to why alternatives to sealing would be insufficient, the documents in question do contain the type of information that a number of district courts in the Fourth Circuit have placed under seal. *See Langley v. Director, Dept. of Corr.*, No. 2:09cv436, 2010 WL 2483876, at *2 (E.D.Va. May 28, 2010) (granting unopposed motion to seal "personal and sensitive information regarding . . . mental health and medical treatment"); *Collins v. Chemical Coatings, Inc.*, No. 5:07cv116, 2008 WL 5105277, at *2 (W.D.N.C.

16

Dec. 1, 2008) ("[c]learly, sealing is necessary to protect sensitive personal health information and identifiers from becoming public records"); *Briggs v. Marriott Intern., Inc.*, 368 F.Supp.2d 461, 463 n. 1 (D.Md. 2005) (granting unopposed motion to seal "personal and medical information"). Considering also that Plaintiff has not opposed the requested relief, WHC's motion to seal will be granted.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment and motion to seal filed by Defendant Washington Hospital Center will be granted. A separate order will follow.

                        _____/s/_____
                        DEBORAH K. CHASANOW
                        United States District Judge